IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
STANLEY G. ALEXANDER, INC.,      *
                                 *
       Plaintiff,                *
                                 *
                                 *    Case No. SAG-19-2573
       v.                        *
                                 *
ALEXANDER'S MOVERS LLC,          *
                                 *
       Defendant.                *
                                 *
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Currently pending is a Motion for Default Judgment filed by Stanley G. Alexander, Inc. d/b/a "Alexander's Moving and Storage, Inc." ("Plaintiff") against Defendant Alexander's Movers LLC ("Defendant"). ECF 18. Defendant did not file an opposition, and the deadline to do so has now passed. *See* Loc. R. 105.2.(a) (D. Md. 2018). I have reviewed Plaintiff's motion, and no hearing is necessary. *See id.* R. 105.6. For the reasons discussed below, Plaintiff's Motion for Default Judgment will be granted.

**I.     BACKGROUND**

Plaintiff offers "moving, transportation, storage, and relocation services" nationwide, including in Maryland. ECF 1, ¶¶ 9, 10. In connection with those services, Plaintiff owns three United States Trademark and Service Mark Registrations: Number 4,667,007 ("the '007 Registration"), Number 5,561,542 ("the '542 Registration"), Number 4,632,520 (" '520 Registration"), which register the marks "ALEXANDER'S," "ALEXANDER'S INTERNATIONAL," and "ALEXANDER'S MOBILITY SERVICES." (collectively, "the ALEXANDER'S MARKS"). *Id.* ¶ 11; *see* ECF 1-1 to -3 (the '007, '542, and '520

Registrations). Plaintiff has used the marks in interstate commerce since as early as 1953. ECF 1, ¶ 12; ECF 18-2 at ¶ 4 (Deem-Hergan Decl.).

Defendant incorporated its business on January 24, 2006, and began using the name "Alexander's Movers," along with "Alexander's" by itself, to advertise moving, transportation, and relocation services in interstate commerce. ECF 1, ¶¶ 16, 17; *see* ECF 18-2 at 129-31 (screenshots from Defendant's website, advertising moving services under the name "Alexander's Movers LLC"). The goods and services Defendant offers are the same and/or similar to those offered by Plaintiff and contained in Plaintiff's trademark registrations for the Alexander's Marks. *Id.* ¶ 18. In May, 2019, Plaintiff sent the first of two letters to Defendant, through its manager, owner, and principal, *id.* ¶ 22, demanding that Defendant cease and desist further infringement of the Alexander's Marks,[1] *id.* ¶ 25; *see* ECF 1-4, 1-5 (the Cease and Desist Letters). Defendant did not respond to either letter. ECF 1, ¶ 25.

Plaintiff filed the instant action on September 5, 2019, ECF 1, and served Defendant with the summons and Complaint on December 4, 2019, ECF 7. Defendant has not responded to the Complaint, and has not appeared in court. The Clerk entered default on March 3, 2020, ECF 16, and Plaintiff filed the instant Motion for Entry of Default Judgment on June 10, 2020, ECF 18.

## II.   STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiff's Motion for Judgment by Default, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). It, however, remains for the Court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.* at 780-

---

[1] This lawsuit originally named Marlene C. Davis, the registered agent, member, manager, owner, and principal of Defendant, as a second Defendant. ECF 1. Plaintiff voluntarily dismissed its claims against Ms. Davis on February 27, 2020. ECF 13.

81; *see also* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688.1 (3d ed. Supp. 2010) ("Liability is not deemed established simply because of the default . . . . [T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the Court determines that liability is established, it must then determine the appropriate remedy. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). In so doing, the Court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court may also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) ("The court need not make this determination [of damages] through a hearing, however. Rather, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum."); *see also Trs. of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civil No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining that, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested"); *Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. 6:09cv00004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, Civil No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest

the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, the court must (1) determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent determination regarding the appropriate relief.

## III. DISCUSSION

Default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). Where default judgment is sought, as described above, this Court first reviews the allegations supporting liability, and then considers the appropriate relief. Here, no evidentiary hearing is necessary, because there is sufficient evidence presented in the record to support a finding of liability and the injunctive relief requested. *See, e.g., Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794–95 (D. Md. 2010).

### A. Liability

Plaintiff seeks default judgment for its federal and state trademark infringement and false designation of origin/unfair competition claims. The federal claims arise under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) (2018).[2] To succeed on the merits of its trademark infringement claim, Plaintiff must prove

---

[2] The elements to establish trademark infringement and unfair competition under federal and Maryland law are essentially the same, and therefore all four counts can be considered together. *See JFJ Toys, Inc. v. Sears Holding Corp.*, 237 F. Supp. 3d 311, 327 n.6 (D. Md. 2017) (citing *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 125 n.3 (4th Cir. 1990)); s*ee also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995) ("In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers.").

> (1) that it owns a valid mark; (2) that the defendant used the mark "in commerce" and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) that the defendant's use of the mark is likely to confuse consumers.

*Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC,* 958 F. Supp. 2d 588, 594 (D. Md. 2013) (quoting *Rosetta Stone Ltd. v. Google, Inc*., 676 F.3d 144, 152 (4th Cir. 2012)); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (quoting 15 U.S.C. §§ 1114, 1125(a)).

Considering those elements, Plaintiff has successfully stated claims for trademark infringement and false designation of origin/unfair competition. First, Plaintiff sufficiently claims that it owns the ALEXANDER's Marks. *See Rosetta Stone Ltd.*, 676 F.3d at 152 (citing 15 U.S.C. § 1114(1)(a)). Plaintiff has used the marks in commerce since 1953, in connection with moving, transportation, storage, and relocation services, and has accrued goodwill as a result of that longstanding use. ECF 1, ¶¶ 12-15. Further, Plaintiff has obtained United States federal registrations for the ALEXANDER'S Marks. *Id.* ¶ 11. The federal registrations constitute *prima facie* evidence that the marks are valid. *See* 15 U.S.C. § 1115(a); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 229 (4th Cir. 2002) ("While it is the use of a mark, not its registration, that confers trademark protection, registration does confer certain benefits on the owner; for example, it serves as prima facie evidence of the mark's validity." (internal citations omitted)).

Second, Plaintiff sufficiently alleges that Defendant used its mark "in commerce" and "in connection with the sale, offering for sale, distribution, or advertising of goods or services," by using ALEXANDER'S and/or ALEXANDER's MOVERS, copying or incorporating Plaintiff's

registered mark, "ALEXANDER'S." *Rosetta Stone Ltd.*, 676 F.3d at 152 (citing 15 U.S.C. § 1114(1)(a)); *see also* ECF 1, ¶¶ 17-18.

Finally, Plaintiff sufficiently claims that Defendant "used the mark in a manner likely to confuse consumers." *Rosetta Stone Ltd.*, 676 F.3d at 152 (citing 15 U.S.C. § 1114(1)(a)). In the Fourth Circuit, nine factors can be considered in determining the likelihood of confusion engendered by use of a mark. *Id.* at 153 (quoting *George & Co., LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir.2009)). Specifically, the Court should weigh

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*Entrepreneur Media,* 958 F. Supp. 2d at 595 (citing *Rosetta Stone Ltd.,* 676 F.3d at 152). The nine factors "are not always weighted equally, and not all factors are relevant in every case." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259–60 (4th Cir. 2007); *see also Rosetta Stone Ltd.*, 676 F.3d at 154 ("This judicially created list of factors is not intended to be exhaustive or mandatory.").

Here, consideration of factors one, two, three, and six compels the conclusion that Defendant's use of Plaintiff's marks is likely to confuse consumers. Plaintiff's marks are all registered and used in commerce; in fact, the ALEXANDER'S mark has been used in commerce since 1953. ECF 1-1 to -3. As a result, these marks have become "strong and distinctive" in interstate commerce, and in Maryland. ECF 1, ¶ 15. Defendant has incorporated the name component of Plaintiff's marks into its own mark, ALEXANDER'S or ALEXANDER'S MOVERS. The duplication or incorporation illustrates the similarity of the two marks, and in turn, demonstrates the likelihood of Defendant's use to confuse consumers. The fact that

Plaintiff and Defendants both operate moving and transportation companies also suggests likelihood of confusion.  Finally, the fact that both companies provide services in Maryland makes them direct competitors, exacerbates the likelihood that consumers will confuse the two, and could suggest a possible intent on Defendant's part to benefit from confusion with a pre-existing establishment.  Defendant's intent to benefit can also be gleaned from Plaintiff's second letter sent to Defendant in June, 2019, in which Plaintiff noted that attempted to speak with Defendant's registered agent, Ms. Davis, by phone, but the representative who took the call "refused to provide additional contact information" for Ms. Davis.  ECF 18-2 at 152.  Taking all of this together, this Court finds that Plaintiff's well-pleaded factual allegations support all of the elements of its claims for trademark infringement and false designation of origin/unfair competition against Defendant, to warrant default judgment against it.

  **B.**  **Relief**

In its motion, Plaintiff does not seek an award of actual damages, but does request a permanent injunction and attorneys' fees and costs.  ECF 18 at 1.

The Lanham Act provides the Court with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a).  Accordingly, permanent injunctive relief is appropriate when a plaintiff demonstrates

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Entrepreneur Media*, 958 F. Supp. 2d at 596 (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). A determination about the appropriateness of permanent injunctive relief lies within this Court's equitable discretion. *Id.* (quoting *eBay Inc.*, 547 U.S. at 391).

In this case, permanent injunctive relief is warranted. Plaintiff has suffered irreparable injury, which regularly follows from trademark infringement. *Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 938 (quoting *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991)). Additionally, damage to a business's reputation and goodwill "may fairly be characterized as 'irreparable' in nature." *Entrepreneur Media*, 958 F. Supp. 2d at 596 (quoting *Innovative Value Corp. v. Bluestone Fin., LLC*, No. DKC 2009–0111, 2009 WL 3348231, at *3 (D. Md. Oct. 15, 2009)).

Next, monetary damages cannot adequately compensate Plaintiff's injury. Due to Defendant's lack of response to Plaintiff's cease-and-desist letters and even its litigation, there is an ongoing threat of continued infringement. *See Innovative Value Corp.*, 2009 WL 3348231, at *3 (finding, based on defendant's failure to participate in litigation and continuance of infringement despite two cease-and-desist letters, that remedies at law were insufficient to compensate for plaintiff's injuries).

The balance of the hardships also weighs in Plaintiff's favor, because Defendant is operating its business in direct violation of the Lanham Act. Finally, a permanent injunction will actually serve the public interest. "This Court has held that 'there is greater public benefit in securing the integrity of [a] Plaintiffs' mark than in allowing [a] Defendant to continue to use the mark in violation of [that] Plaintiffs' rights.'" *Entrepreneur Media*, 958 F. Supp. 2d at 596 (quoting *Innovative Value Corp.*, 2009 WL 3348231, at *3).

Accordingly, this Court will grant default judgment in favor of Plaintiff, will order permanent injunctive relief as provided in the accompanying Order, and will defer ruling on an appropriate award of reasonable attorneys' fees and costs after further submission from Plaintiff, and an opportunity for Defendant to respond.  In making its request for attorneys' fees under 15 U.S.C. § 1117(a), Plaintiff will be required to demonstrate that, pursuant to *Georgia-Pacific Consumer Products, LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015), this case is one of those "exceptional" ones requiring a fee award.  Plaintiff's submission will be due two weeks from today, July 13, 2020, and Defendant will be granted two weeks to file an opposition.

A separate Order follows.

Dated:  June 29, 2020                                           /s/
                                                        Stephanie A. Gallagher
                                                        United States District Judge